J. Michael Winchester (Pro Hac Vice)
Winchester, Sellers, Foster & Steele, P.C.
800 South Gay St., Ste. 1000
Knoxville, TN 37929
Telephone:  865-637-1980
Facsimile:  865-637-4489
mwinchester@wsfs-law.com
Attorneys for First Tennessee Bank National
Association

Kevin J. Parker (#010408)
Benjamin W. Reeves (#025708)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona  85004-2202
Telephone:  602.382.6000
Facsimile:   602.382.6070
breeves@swlaw.com
kparker@swlaw.com
Attorneys for First Tennessee Bank National
Association

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Federal Trade Commission; all Fifty States; and the District of Columbia;<br><br>Plaintiffs,<br><br>vs.<br><br>Cancer Fund of America, Inc., a Delaware corporation, et al.;<br><br>Defendants. | No. CV-15-00884-PHX-NVW<br><br>**THIRD PARTY FIRST TENNESSEE BANK NATIONAL ASSOCIATION'S MOTION TO MODIFY STIPULATED ORDERS FOR PERMANENT INJUNCTION AND APPOINTING RECEIVER OVER CHILDREN'S CANCER FUND OF AMERICA, INC. WITH REQUEST FOR EXPEDITED HEARING AND OTHER RELIEF** |

**FIRST  TENNESSEE  BANK  NATIONAL  ASSOCIATION** (the "**Bank**"),[1] by

and through undersigned counsel, moves this Court to modify, amend, and/or dissolve this

Court's:  (i) Stipulated Order for Permanent Injunction and Monetary Judgment Against

Children's  Cancer  Fund  of  America,  Inc.,  et  al. [Doc. 13] filed  May  22,  2015  (the

---

[1]     The  Bank  specially  appears,  and  reserves  the  right  to  contest  whether  it,  or  its
property, is subject this Court's jurisdiction.

21797773

"**Injunction Order**"), (ii) the Stipulated Order Appointing Receiver Over Children's Cancer Fund of America, Inc. [Doc. 57] entered May 28, 2015 (the "**Receivership Order**"), and (iii) other relief requested herein relating to certain assets, liabilities, accounts, and property of Children's Cancer Fund of America, Inc. ("**CCFOA**").   In support of its Motion, the Bank states as follows:

## I.      PRELIMINARY STATEMENT

1.      The Bank is a national banking association organized under the laws of the United States of America with principal office and place of business in Memphis, Tennessee, and with numerous offices throughout the state of Tennessee, including Knoxville, Tennessee.   The Bank has an outstanding commercial loan to CCFOA designated as Loan No. -9209 evidenced by a Note in the original principal amount of $320,000.00 dated February 28, 2008 (the "Note"), which has been modified to increase the principal balance to $465,000.00 as of May 9, 2011 (the "Loan").   The Loan is secured by a Deed of Trust dated February 28, 2008, as modified ("Trust Deed"), executed by CCFOA in favor of the Bank encumbering improved real property located at 2317 W. Emory Road, Powell, Tennessee 37849 (the "Collateral"), more particularly described herein.

2.      That in 2013 and 2014, CCFOA established two (2) checking accounts designated as Account No. -1551 and Account No. -0448, respectively, at the Bank by signing Signature Cards which bind the depositor to the terms of a Bank Deposit Agreement, more particularly described herein.   There is one (1) additional deposit Account No. -6411 with a negative balance of $306.59.   All of the checking accounts (the "Accounts") were operated and maintained by CCFOA up to and including the date of entry of the Orders entered by this Court referenced herein.   The current net available balance of funds in the Accounts as of the date hereof is $111,707.05.

3.      Copies of the Note and Trust Deed from CCFOA and the Depositor's Agreement excerpts applicable to the Accounts of CCFOA at the Bank are attached to the Declaration of C. Durham Pettigrew, an officer in the Special Assets Division of the Bank

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

(the "Declaration") as Exhibits 1, 2, and 3 respectively, filed in support of this Motion attached hereto as **<u>Exhibit A</u>**.  The Bank's rights of setoff against the Accounts have been reserved by an administrative freeze that was granted by terms of the Note to allow the Bank to protect its setoff rights by appropriate action, including the filing of this Motion so that the setoff rights of Bank available against assets of CCFOA will not be lost without due process.  The administrative hold or "freeze" was placed on the Accounts upon declaration of a default on the Loan that occurred prior to entry of the Orders. (*Declaration*, ¶¶ 8-9).

4.     Although the Bank is not a named party in the original pleadings herein, both the Injunction Order and Receivership Order (collectively the "Orders") contain provisions that adversely impact and prejudice the rights of the Bank as a creditor and secured party of CCFOA in relation to the Trust Deed, Loan, and Accounts, including setoff rights created by contract and relevant law more particularly discussed herein. Specifically, the Receiver contacted officials of the Bank on or about Monday, June 1, 2015, and requested a turnover of all funds in the Accounts, and has asserted that any failure to comply with his request may result in court action for writs of possession, attachment, or otherwise pursuant to the terms of the Receivership Order contained in IV, pp. A and B.  (<u>See</u> *Declaration*, ¶ 15).

5.     In Section VII of said Receivership Order, any "other persons seeking to establish or enforce any claim, right, or interest against or on behalf of CCFOA" have been enjoined from taking action that would interfere with this Court's jurisdiction over the assets or documents of CCFOA or from taking other actions enumerated therein "except by leave of this Court" during pendency of this Receivership.  The Bank is filing this Motion and the supporting materials referenced herein consistent with the terms and provisions of the Receivership Order to protect and enforce its claims, rights, or interest in funds in the Accounts and under its Loan documents, including the Loan and Trust Deed and any related collateral documents and any rights of setoff available to the Bank under its contracts and relevant law.  It is not the Bank's intention to violate the terms of any of

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

21797773

- 3 -

1   the Orders by temporarily delaying compliance with the Receiver's request pending the

2   resolution of this Motion, which is a good faith attempt to comply with the spirit and letter

3   of the Orders while at the same time seeking the protection of its collateral and

4   enforcement of rights available to the Bank under its Loan and Deposit documents and

5   relevant law as a secured creditor of CCFOA.

6         6.      In order to mitigate and avoid as much inconvenience, additional expense,

7   or delay as possible to any party, the Bank is requesting an EXPEDITED HEARING in

8   this Court to be conducted at the earliest possible date.  The Bank also seeks this Court's

9   protection of the Bank's rights, collateral, and other interests referenced herein as well as

10  modification of the Orders and leave of Court to permit the Bank to proceed with its setoff

11  rights against the Accounts and other available remedies established by contract and

12  relevant law as a secured creditor against any collateral securing the Loan.

13  **II.     MEMORANDUM OF LEGAL AUTHORITY AND ARGUMENT**

14        Pursuant to Local Rule Civ. 7.2 of this Court, the Bank submits the following as a

15  Memorandum of points and authorities relied upon in this Motion:

16  A.   Rights of Setoff and Temporary Administrative Hold to Preserve Assets and

17  Rights.

18        7.      The particular assets of CCFOA affected by the Orders and subject to the

19  Bank's claims are located in Tennessee.   Under Tennessee law, it has been well-

20  established for almost one-hundred years that a bank has setoff rights against a depositor

21  that is also a debtor to the same bank, and that such rights of setoff are available to a bank

22  against a loan or other obligation from its debtor/depositor whether the debt is matured or

23  unmatured.  This common law right of setoff is available to a bank during insolvency

24  proceedings, probate proceedings, assignments for the benefits of creditors, and trustees in

25  bankruptcy.   Conquest v. Broadway National Bank, 134 Tenn. 17, 183 S.W. 160

26  (Tenn.Sup.Ct. 1915).  And even applies if the bank accelerates the debt *after* creditors

27  attempt to execute against the money in the account.  See Carpenters S. California Admin.

28  Corp. v. Manufacturers Nat. Bank of Detroit, 910 F.2d 1339, 1341 (6th Cir. 1990) ("[A]

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

1  garnishee-bank may exercise its right of setoff against indebtedness which matures after

2  the garnishment writ is served").

3      8.    It has been generally recognized in Tennessee for decades that the

4  relationship between a bank and depositor is that of debtor and creditor. Dickson v.

5  Simpson, 172 Tenn. 680, 113 S.W.2d 1190 (Tenn.Sup.Ct. 1938); see also Valley Nat.

6  Bank v. Witter, 58 Ariz. 491, 499, 121 P.2d 414, 418 (1942) (same). This basic legal

7  principle has also been recognized by our Federal Courts. See United States v. Bank of

8  Celina, 721 F.2d 163 (6th Cir. 1983). In the case of Citizens Bank v. Strumpf, 516 U.S.

9  16, 116 S. Ct. 286 (1995), the Supreme Court recognized the right under Maryland law to

10  setoff the defaulted loan against the balance of a checking account. In its holding, the

11  Supreme Court held that an administrative hold to preserve a right of setoff did not violate

12  the automatic stay provided by 11 U.S.C. §362(a) of the Bankruptcy Code, reasoning that

13  no actual setoff had yet occurred. Although this Receivership action is not a bankruptcy

14  case, the Supreme Court's ruling and analysis supports the propriety of an administrative

15  hold by the Bank in connection with asserting its setoff rights and that such temporary

16  actions are not "a taking of possession of respondent's (CCFOA or its Receiver) property

17  nor an exercising of control over it" while such rights are being litigated and resolved.

18  Strumpf, at pg. 21.

19      9.    As stated in the Strumpf case, the Supreme Court has held that a right of

20  setoff "allows entities that owe each other money to apply their mutual debts against each

21  other, thereby avoiding the absurdity of making A pay B when B owes A." See Strumpf,

22  at pg. 18. The Bank's Loan documents, including specifically the Note (*Declaration*,

23  Exh. 1, page 2), specifically authorized a right of setoff as well as a procedure to

24  administratively freeze any account to protect lender's charge and setoff rights. This is

25  exactly what has been done in this case involving the Accounts of CCFOA following a

26  declaration of default and demand for payment by the Bank to CCFOA upon the Bank's

27  receiving Notice of the pending Receivership action, but prior to notice of entry of the

28  Receivership Order. (See *Declaration*, ¶ ¶ 8-9).

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

21797773

1    10.    The Bank also has a Deposit Agreement governing the Accounts which

2    confirms the right of setoff against the Accounts for "any due and payable debt" of the

3    depositor to the Bank.  (See *Declaration*, Exh. 3).  The Signature Cards for the Accounts

4    are attached to the same <u>Exhibit 3</u> and are signed by representatives of CCFOA.

5        B.  <u>Rights, Title, and Priority of Interest in CCFOA Assets.</u>

6        11.    It is well-settled that in most jurisdictions a receiver takes property of an

7    insolvent debtor subject to mortgages, judgments, and other liens existing at the time of

8    his or her appointment.  <u>French v. Buffatt</u>, 161 Tenn. 500, 33 S.W.2d 92 (Tenn. 1930); <u>see</u>

9    <u>also</u> Wuliger <u>v. Manufacturers Life Ins. Co.</u>, 567 F.3d 787, 793 (6th Cir. 2009) ("'The

10   general rule is that a receiver acquires no greater rights in property than the debtor had and

11   that, except as to liens in existence at the time of the appointment, the receiver holds the

12   property for the benefit of general creditors under the direction of the court.'") (quoting

13   <u>Javitch v. First Union Sec., Inc.</u>, 315 F.3d 619, 625 (6th Cir. 2003)).  "[R]eceivers hold

14   the property, as officers of the court, just as the debtor held it, subject to any rights or

15   equities which could have been asserted against him."  <u>Powell v. Maryland Trust Co.</u>, 124

16   F.2d 260, 272 (4th Cir. 1942).   The appointment of a receiver neither settles, nor

17   prejudices rights to any underlying assets, including the priority, validity, and rights of

18   secured parties and holders of setoff rights.  <u>See</u>, <u>e.g.</u>, <u>Trougher v. Akin</u>, 109 Tenn. 451,

19   73 S.W. 118 (1902); and <u>National Surety Corp. v. Sharpe</u>, 236 N.C. 35, 50, 72 S.E.2d 109,

20   123 (1952).

21       12.    In other jurisdictions, this proposition has been reviewed in the case of <u>State</u>

22   <u>ex rel. Eure v. Lawrence</u>, 93 N.C. at 446, 378 S.E.2d 207 (1989) wherein the North

23   Carolina Court of Appeals confirmed a bank's right of setoff against a receiver finding

24   that the appointment of a receiver <u>did</u> <u>not</u> nullify the mutual obligations between the bank

25   and the depositor.  The Bank asserts that the <u>Lawrence</u> case is persuasive authority under

26   the facts and circumstances in this case and that the Receiver cannot obtain a better title or

27   more rights to any assets of CCFOA than CCFOA possessed at the time of appointment of

28   the Receiver.  <u>Also</u> <u>see</u> <u>Camerer v. California Savings & Comm'l Bank</u>, 4 Cal. 2d 159, 48

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

P.2d 39 (1935) and <u>Barber v. Reina Nash Motor Co.</u>, 72 Wyo. 65, 260 P.2d 928 (1953) and <u>Glenn Justice Mortgage Co. v. First Nat'l Bank of Fort Collins</u>, 592 F.2d 567, 573, n.7 (10th Cir. 1979) (applying "**majority rule**" and affirming setoff by bank that occurred after appointment of a receiver) (emphasis added).

C. <u>Status of Loan, Loan Payments, and Disposition of Collateral.</u>

13.    The Loan from the Bank to CCFOA is a commercial loan and is now in default and due and payable in full due to the material adverse changes in the financial condition of CCFOA caused by, among other things, the filing of the Complaint in this cause and the Stipulated Orders appointing a Receiver and agreeing to injunctive relief. (<u>See</u> *Declaration*, ¶ 8).  The Bank respectfully contends that it is obvious to any objective observer that the prospects of payment or performance by CCFOA under the terms of the Loan are not only substantially impaired, but are enjoined and prohibited by the terms of the Orders.  Further, the actual filing of the Complaint constitutes an event of default entitling the Bank to proceed with its rights to declare a default, accelerate payment, and pursue its remedies by contract and under relevant law.  (<u>See</u> *Declaration*, Exh. 1, pg. 00001).

14.    The Bank claims and holds rights as a secured creditor and mortgagee against property of CCFOA described in the Trust Deed attached to the Declaration filed in support of this Motion.  (<u>See</u> *Declaration*, Exh. 2).  The payment stream and debt service for repayment of the Loan secured by the Trust Deed have been unquestionably interrupted by the entry of the Orders.  While the Bank believes, subject to updated verification and evaluation, that the property encumbered by the Trust Deed may have a fair market value equal to or greater than the outstanding balance of the commercial Loan owing to the Bank, the cessation of operation and discontinuance of business by CCFOA may have a negative impact on the market value of the collateral securing the Loan which cannot be fully evaluated and quantified at this time.  (<u>See</u> *Declaration*, ¶ 11).  The Bank believes, and therefore avers, that the Receiver may likely attempt to sale, lease, occupy, and/or use the improved real estate described in the Trust Deed during the course of

winding down and/or liquidating the business assets of CCFOA, during which period of time the prospects of payments on the Loan are nonexistent except from the proceeds available in the Accounts.  (See _Declaration_, ¶¶ 10, 12).

15.    Relevant provisions of both Orders prohibit payments on any debt of CCFOA to any person, and the Receiver may not make payments or disbursements from assets of CCFOA on any debt or obligation of CCFOA incurred prior to the date of entry of the Orders unless it applies to the Court for prior approval pursuant to Section II, ¶ G of the Receivership Order.  As a secured creditor of CCFOA, the Bank has a right to a continuation of payments of its secured debt and obligation under the clear language of its Note and Trust Deed, all terms of which are required under Tennessee law to be enforced as written.  Tenn. Code Ann. § 47-50-112.

16.    The Bank has been informed that the Receiver has already contacted branch bank officials of the Bank for the purpose of adding his name to at least one (1) Signature Card Agreement for the Accounts held at the Bank.  Since the funds in the Accounts have been held pursuant to an administrative hold by the Bank at all material times, the Receiver should not have any greater rights to the funds in the Accounts than CCFOA had at the time of the filing of the Receivership action and the entry of the Orders.  The funds in the Accounts are subject to the clearly stated and unambiguous setoff rights of the Bank established by both contract and relevant law.  (See _Declaration_, Exh. 1, pg. 00002 and Exh. 3, pg. 00020-21).

17.    While the Bank intends to cooperate with the Receiver pursuant to the Orders, any actions by the Receiver involving the Accounts (including attempts to withdraw funds or to issue checks to third parties) will likely result in a conflict of the rights of the Bank asserted herein as a mortgagee and secured creditor and as a holder of a right of setoff **versus** the rights and powers of the Receiver set forth in the Orders of this Court.  The Bank's Motion seeks this Court's protection of such rights and reconciliation of any unintended adverse consequences of the Orders against third parties such as the Bank.

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

D. <u>Request for Expedited Hearing and Leave of Court to Protect Bank's Rights.</u>

18.     Accordingly, the Bank requests that an **expedited hearing** be held to determine the respective rights, title, priority, and interest of said parties in the aforesaid Accounts and Collateral at the earliest possible date, and that the Court enter an appropriate order protecting the Bank's rights and **granting leave of Court** to enforce and protect its Collateral, including setoff rights in the Accounts, and to modify the Orders accordingly.[2]  It is the Bank's intention to try to work these problems out with the Receiver to the extent possible to avoid unnecessary fees and expenses, and such attempts have been made and are in process at this time.  (<u>See</u> *Declaration*, ¶ 15).

E. <u>Lack of Personal Jurisdiction, *In Rem* Jurisdiction, and Lack of Due Process.</u>

19.     The Bank notes that it is not a party to this action, has not been served with process, and did not have an opportunity to object to the appointment of the Receiver. Accordingly, it is not properly before this Court and this Court lacks the jurisdiction over the Bank.  <u>SEC v. Ross</u>, 504 F.3d 1130, 1138-39 (9th Cir. 2007) ("Without a proper basis for jurisdiction, or in the absence of proper service of process, this district court has no power to render any judgment against the defendant's person or property.").

20.     The Court and Receiver appear to have *in rem* jurisdiction over the funds in the Accounts in Tennessee at this time.  <u>See</u> 28 U.S.C. §§ 754[3] and 1692;[4] *Ross*, 504 F.3d

---

[2]     Courts must consider three factors when deciding whether to lift the litigation stay with regard to litigation against the receivership estate: (i) whether refusing to lift the stay genuinely preserves the status quo or whether the moving party will suffer substantial injury if not permitted to proceed; (ii) the time in the course of the receivership at which the motion for relief from the stay is made; and (iii) the merit of the moving party's underlying claim.  <u>United States v. Acorn Tech. Fund, L.P.</u>, 429 F.3d 438, 443 (3d Cir. 2005) (citing <u>S.E.C. v. Wencke</u>, 742 F.2d 1230, 1231 (9th Cir. 1984)).  The Bank is obviously entitled to protect its collateral notwithstanding the appointment of the Receiver, and it should be granted leave to do so.  <u>See</u> <u>United States v. Beaver</u>, 252 F.2d 486, 488 (3d Cir. 1958) (recognizing that entry of a receivership order does not divest or suspend the property rights of the receivership entities' creditors)

[3]     28 U.S.C. § 754 provides:

Receivers of property in different districts

        A receiver appointed in any civil action or proceeding involving property, real, personal or mixed, situated in different districts shall, upon giving bond as required by the court, be vested with complete jurisdiction and control of

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona  85004-2202
602.382.6000

at 1140-41; *Hailey v. Henderson Nat'l Bank*, 657 F.2d 816, 823 (6th Cir. 1981) (holding that district court lacked jurisdiction over nonparty when receiver failed to follow procedural mechanisms of 28 U.S.C. §§ 754 and 1692); see also SEC v. Vision Communications, Inc., 74 F.3d 287, 290 (D.C. Cir. 1996) (holding that district court lacked authority to enjoin nonparty when receiver failed to file complaint and order in nonparty's home district); Am. Freedom Train Found. v. Spurney, 747 F.2d 1069, 1073-74 (1st Cir. 1984) (same).

## III.     CONCLUSION

In conclusion, the Bank has filed this Motion with a supporting Declaration, with Exhibits attached thereto, seeking modification of the Orders and for an expedited hearing in a good faith effort to protect its rights to its Collateral and funds in the Accounts while at the same time complying with the Orders and requests of the Receiver, and to seek leave of this Court to pursue enforcement of its claims and rights to the Collateral and the funds in the Accounts and for such other and further relief as to which it may be entitled.

---

all such property with the right to take possession thereof.

He shall have capacity to sue in any district without ancillary appointment, and may be sued with respect thereto as provided in section 959 of this title.

Such receiver shall, within ten days after the entry of his order of appointment, file copies of the complaint and such order of appointment in the district court for each district in which property is located.  The failure to file such copies in any district shall divest the receiver of jurisdiction and control over all such property in that district.

[4]     28 U.S.C. § 1692 provides:

Process and orders affecting property in different districts

In proceedings in a district court where a receiver is appointed for property, real, personal, or mixed, situated in different districts, process may issue and be executed in any such district as if the property lay wholly within one district, but orders affecting the property shall be entered of record in each of such districts.

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

21797773

- 10 -

RESPECTFULLY SUBMITTED, this 5th day of June, 2015.

**FIRST TENNESSEE BANK NATIONAL ASSOCIATION**


By /s/ J. Michael Winchester
    J. Michael Winchester (Pro Hac Vice)(BPR #6049)
    Suite 1000, First Tennessee Plaza
    800 South Gay Street
    Knoxville, Tennessee 37929
    Attorney for First Tennessee Bank National
    Association


**SNELL & WILMER L.L.P.**


By /s/ Benjamin W. Reeves
    Kevin J. Parker (#010408)
    Benjamin W. Reeves(#025708)
    One Arizona Center
    400 E. Van Buren
    Phoenix, Arizona 85004-2202
    Attorneys for First Tennessee Bank National
    Association

21797773

1

## CERTIFICATE OF SERVICE

2

The undersigned hereby certifies that a true and exact copy of the foregoing Motion was filed electronically and served by operation of the ECF system upon all parties and otherwise by U.S. Mail this 5th day of June, 2015.

3

4

5

**FIRST TENNESSEE BANK NATIONAL ASSOCIATION**

6

7

/s/ Lisa Norris
Lisa Norris

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

21797773

# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Federal Trade Commission; all Fifty States; and the District of Columbia,<br><br>                    Plaintiffs,<br>vs.<br><br>Cancer Fund of America, Inc., a Delaware corporation, et al;<br><br>                    Defendants. | No. CV-15-00884-PHX-NVW<br><br><br>**DECLARATION OF C. DURHAM PETTIGREW** |

COMES NOW the Declarant, **C. DURHAM PETTIGREW**, and makes this unsworn Declaration under penalty of perjury pursuant to 28 U.S.C. §1746 and does hereby declare as follows:

1.      I am an adult resident citizen of the State of Tennessee employed as an officer in the Special Assets Division of First Tennessee Bank National Association (the "**Bank**"). In that capacity, I am a custodian of records and possess personal knowledge of information relating to the commercial loans and deposit accounts of CHILDREN'S CANCER FUND OF AMERICA ("**CCFOA**") maintained, established, or issued from the Bank and identified more specifically herein;

2.      That the copies of records attached to this Declaration are true, accurate, and complete (except where redacted or excerpted due to privacy or volume) and evidence records of regularly conducted activity by the Bank, such records being made at or near the time by someone with knowledge thereof and otherwise maintained or kept in the course of regularly conducted activities of the Bank, such recordkeeping being a regular practice of such activity required by Bank policy and relevant law;



EXHIBIT
*A*

3.      That the Bank is the current owner, holder, and party entitled to enforce a commercial loan evidenced by a copy of a Promissory Note in the original principal amount of $320,000.00 dated February 28, 2008, executed and delivered by CCFOA to the Bank, said instrument being modified and amended by a Change in Terms Agreement dated May 9, 2011 (collectively the "**Note**"), said Note being designated on the internal records of the Bank as Loan No. -9209 (the "**Loan**"), copies of said instruments being attached hereto and incorporated herein by reference as Exhibit 1;

4.      That to secure repayment of the Note and the indebtedness evidenced by the Loan, CCFOA executed and delivered in favor of Bank a Deed of Trust dated February 28, 2008, as modified by Modification of Deed of Trust dated May 9, 2011 (collectively the "**Trust Deed**"), said instruments being duly executed, notarized, and recorded in the Register of Deeds Office for Knox County, Tennessee, encumbering real property identified and commonly known as 2317 W. Emory Road, Powell, Tennessee 37849 (the "**Collateral**"), more particularly described therein, copies of said instruments being attached hereto and incorporated herein by reference as Exhibit 2;

5.      That in 2013 and 2014, representatives of CCFOA signed Signature Card Agreements to establish and maintain three (3) checking accounts in the name of CCFOA (the "**Accounts**") at the Bank and agreed to be bound by the terms of the Bank Depositor Agreement and Disclosure Form, said Signature Cards and excerpts of said Depositor Agreement being attached hereto and incorporated herein by reference as Exhibit 3;

6.      That as of June 2, 2015, the unpaid principal amount of the Loan evidenced by the Note was $300,800.25, exclusive of unpaid interest, costs, attorney's fees and charges chargeable to the Loan under the terms and provisions thereof;

7.      That as of June 2, 2015, the net available funds in the Accounts of CCFOA totaled $111,707.05;

8.      That on or about May 20, 2015, the undersigned Declarant and other representatives of the Bank were notified of the filing of a Complaint by the Federal Trade Commission (FTC) and other governmental agencies and/or authorities against CCFOA and other related entities and individuals (the **"Litigation"**) and of the general allegations and actions asserted therein, whereupon the undersigned and other representatives of the Bank determined that CCFOA had, among other things, agreed to appoint a receiver and incurred material adverse charges that were events of default under the terms of the Note; further, as a result of the defaults, the Bank declared the entire unpaid principal balance of the Loan and all accrued unpaid interest immediately due and payable in full;

9.      That contemporaneously with the declaration of default and acceleration of the indebtedness evidenced by the Loan, the Bank exercised its option granted under the terms of the Note to administratively freeze and/or hold the Accounts of CCFOA, to allow Bank to protect its charge and setoff rights.  The administrative hold or "freeze" placed on the Accounts remains in place as of the date of execution of this Declaration;

10.     That the Declarant is unaware of any other source of repayment or debt service for the Loan other than the funds in the Accounts or liquidation of Collateral for the Loan;

11.     That subject to the update, inspection, verification, and evaluation of the condition of the property encumbered by the Trust Deed, the Bank has reason to believe that the fair market value of the collateral securing the Loan is equal to or greater than the outstanding balance of the Loan; however, the Bank cannot evaluate or quantify the negative impact of the

cessation of operation and discontinuance of business by CCFOA on the market value of its collateral at this time;

12.     The Declarant, based on information available to the Bank at this time, believes and therefore avers that the Receiver appointed by the Court in the Litigation will likely attempt to sell, lease, occupy, and use the real estate encumbered by the Trust Deed in favor of the Bank during the course of winding down and liquidating the assets of CCFOA;

13.     That the Declarant was contacted by the Receiver on or about June 1, 2015, at which time the Receiver made a request for turnover of all funds in the Accounts.  The Declarant advised the Receiver at that time of the Bank's claims and rights to setoff against funds in the Accounts and of the existence of the administrative hold on the Accounts as the result of default in payment of the Loan;

14.     That the Declarant, as the representative of the Bank and on the Bank's behalf, has discussed terms with the Receiver to informally resolve and cooperate with the Receiver to reconcile issues involving the availability of funds in the Accounts and the Bank's rights and interest under its Loan and deposit documentation; however, the Bank and the Receiver have not resolved those issues as of the date hereof; and

15.     On or about June 1, 2015, the Declarant was informed through Bank information systems that the Receiver had already contacted branch Bank officials for the purpose of adding his name to at least one (1) Signature Card Agreement for the Accounts held by the Bank, and that he would seek writs from the Court if Account funds were not timely released to him.  The Bank notified the Receiver that it has reserved all rights to assert setoff against the Accounts and continues to maintain the administrative hold pending resolution of these issues by leave of Court and further negotiations and discussions with the Receiver, or both.

I declare penalty of perjury that the foregoing is true and correct.

EXECUTED on the _____4th_____ day of June, 2015.

C. DURHAM PETTIGREW

EXHIBIT 1

## PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $320,000.00 | 02-28-2008 | 02-28-2018 | 9299 | 1010 / 0385 | 2395812 | 2395B |  |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

| Borrower: | Children's Cancer Fund of America (TIN: 20-1226416)<br>7714 Conner Road, Suite 108<br>Powell, TN 37849 | Lender: | First Tennessee Bank National Association<br>Business Lending Center<br>4990 Poplar Ave., Suite 200<br>Memphis, TN 38117<br>(800) 971-7346 |
|---|---|---|---|

**Principal Amount: $320,000.00**     **Interest Rate: 6.000%**     **Date of Note: February 28, 2008**

**PROMISE TO PAY.** Children's Cancer Fund of America ("Borrower") promise to pay to First Tennessee Bank National Association ("Lender"), or order, in lawful money of the United States of America, the principal amount of Three Hundred Twenty Thousand & 00/100 Dollars ($320,000.00), together with interest at the rate of 6.000% per annum on the unpaid principal balance from February 28, 2008, until paid in full. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

**PAYMENT.** Borrower will pay this loan in 119 payments of $3,566.23 each payment and an irregular last payment estimated at $3,566.99. Borrower's first payment is due March 28, 2008, and all subsequent payments are due on the same day of each month after that. Borrower's final payment will be due on February 28, 2018, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to any unpaid collection costs; and then to principal. The annual interest rate for this Note is computed on a 365/360 basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**PREPAYMENT PENALTY.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Upon prepayment of this Note, Lender is entitled to the following prepayment penalty: This Note shall not be prepaid except as expressly provided herein. At any time, the privilege is reserved to pay the entire balance, or any portion thereof, owing hereunder upon the following terms: (i) prepayments made out of the internally generated funds may be made at any time with no penalty whatsoever; (ii) prepayments which are not made from the internally generated funds, but which are financed from any other source shall be subject to a prepayment premium determined by multiplying the Premium Percentage (hereinafter defined) for the Loan Year (hereinafter defined) in which such prepayment occurs by the prepaid principal balance. As used herein, the term "Loan Year" shall mean each successive twelve (12) month period commencing on the date of execution hereof. For each Loan Year, the term "Premium Percentage" shall mean 3.0% for years 1 and 2; 2.0% for years 3 and 4; and, 1.0% for year 5. Any partial prepayment of principal shall not have the effect of suspending or deferring the monthly principal payments herein provided for, but the same shall continue to be due and payable on such due date subsequent to any such partial prepayment of the principal, and shall operate to effect full payment of the principal at an earlier date. Except for the foregoing, Borrower may pay all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: First Tennessee Bank National Association, P.O. Box 31 Memphis, TN 38101.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the interest rate on this Note shall be increased to 21.000% per annum. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insolvency.** The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note. In the event of a death, Lender, at its option, may, but shall not be required to, permit the guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

**Change in Ownership.** Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

Any payment not made when due hereunder (whether by acceleration or otherwise) shall bear interest after maturity at the maximum effective contract rate of interest which the Lender may lawfully charge.

In the event of any renewal or extension of the loan indebtedness evidenced hereby, unless the parties otherwise agree to a lower rate, the Lender shall have the right to charge interest at the highest of the following rates: (i) the maximum rate permissible at the time the contract to make the loan was executed; or (ii) the maximum rate permissible at the time the loan was made; or (iii) the maximum rate permissible at the time of such renewal or extension; or (iv) the maximum rate permitted by applicable federal law; it being intended that those statutes and laws, state or federal, from time to time in effect, which permit the charging of the higher rate of interest shall govern the maximum rate which may be charged hereunder. In the event that for any reason the foregoing provisions hereof shall not contain a valid, enforceable designation of a rate of interest prior to maturity or method of determining the same, then the indebtedness hereby evidenced shall bear interest prior to maturity at the maximum effective rate which may be lawfully charged by the Lender under applicable law.

Regardless of any provision herein, or in any other document executed in connection herewith, the holder hereof shall never be entitled to receive, collect, or apply, as interest hereon, any amount in excess of the maximum contract rate which may be lawfully charged by the holder hereof under applicable law; and in the event the holder hereof receives, collect, or applies as interest, any such amount, such amount which would be excessive interest shall be deemed a partial prepayment of principal and treated hereunder as such; and, if the principal hereof is paid in full, any remaining excess shall forthwith be paid to the undersigned. In determining whether or not the interest paid or payable, under any specific contingency, exceeds the maximum lawful contract rate, the undersigned and the holder hereof shall, to the maximum extent



00001

Loan No: ████9209

PROMISSORY NOTE
(Continued)

Page 2

permited by applicable law, (a) characterize any non-principal payment as a reasonable loan charge, rather than as interest; (b) exclude voluntary prepayments and the effects thereof; and (c) amortize, prorate, allocate, and spread, in equal parts, the total amount of interest throughout the entire contemplated term hereof, so that the interest accrued or to accrue throughout the entire term contemplated hereby shall at no time exceed the maximum lawful contract rate.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Tennessee without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Tennessee.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Shelby County, State of Tennessee.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $25.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**FINANCIAL STATEMENTS.** The undersigned agrees to furnish a current financial statement upon the request of Lender from time to time, and further agrees to execute and deliver all other instruments and take such other actions as Lender may from time to time reasonably request in order to carry out the provisions and intent hereof.

**LATE FEE.** For any payment which is not made within 10 days of the due date for such payment, the Borrower shall pay a late fee. The late fee shall equal 5% of the unpaid portion of the past-due payment.

**EXCLUSION FROM INDEBTEDNESS.** Excluded from indebtedness shall be any indebtedness governed by the Federal Truth in Lending Act.

**COLLATERAL.** Borrower acknowledges this Note is secured by the following collateral described in the security instrument listed herein: a Deed of Trust dated February 28, 2008, to a trustee in favor of Lender on real property located in Knox County, State of Tennessee.

**LENDER ADDITIONAL DEFINITION.** First Tennessee Bank National Association which also trades as First Horizon.

**USA PATRIOT ACT.** Important information about procedures for opening a new account. To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each business entity that opens an account.

What this means to you: When you open an account, we will ask for Federal Tax Identification Number, physical street address of your business, full legal name of your business and other information that will allow us to identify your company. We may also ask you to provide copies of certain documents that will aid in confirming this information.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

CHILDREN'S CANCER FUND OF AMERICA

By: _____
    Rose Perkins, CEO of Children's Cancer Fund of America

LASER PRO Lending, Ver. 5.38.10.001  Copr. Harland Financial Solutions, Inc. 1997, 2008.  All Rights Reserved.  TN  C:\HARLAND\FINCHER0\PL\D20.FC  TR-48200  PR-5

00002

## CHANGE IN TERMS AGREEMENT

| Principal | Loan Date | Maturity | Loan No. | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $465,000.00 | 05-09-2011 | 04-28-2021 | 63209 | | | 32958 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

Borrower: Children's Cancer Fund of America
2317 West Emory Road
Powell, TN 37849

Lender: First Tennessee Bank National Association
Business Lending Center
300 Court Ave., 3rd Floor
Memphis, TN 38103
(800) 975-7348

Principal Amount: $465,000.00                                    Date of Agreement: May 9, 2011

DESCRIPTION OF EXISTING INDEBTEDNESS.
Promissory Note dated February 28, 2006, from Borrower to Lender, evidencing a loan in the original amount of $320,000.00 and all modifications in file.

DESCRIPTION OF COLLATERAL.
Real property located at 2317 W. Emory Road Powell, Knox County, TN 37849.
The following change will be effective as of May 09, 2011:

The current principal balance of the loan will be increased from $207,699.59 to $465,000.00.

The maturity date of the loan will be extended from February 28, 2016 to April 28, 2021.

The interest rate of the loan will be changed from a fixed rate of 6.00% to a fixed rate of 6.47%.

Document Fee. Borrower acknowledges that any fees associated with this Change in Terms Agreement and any collateral documents are for the account of the Borrower and Borrower agrees to reimburse Lender for any such fees. A document fee in the amount of $3,000.00 may be due and payable with the initial billing under the terms of the Change in Terms Agreement and will be in addition to any scheduled payment.

Prepayment Penalty. This Note shall not be prepaid except as expressly provided herein. At any time, the privilege is reserved to pay the entire balance, or any portion thereof, owing hereunder upon the following terms: (i) prepayments made out of the internally generated funds may be made at any time with no penalty whatsoever; (ii) prepayments which are not made from the internally generated funds, but which are financed from any other source shall be subject to a prepayment premium determined by multiplying the Premium Percentage (hereinafter defined) for the Loan Year (hereinafter defined) in which such prepayment occurs by the prepaid principal balance. As used herein, the term "Loan Year" shall mean each successive twelve (12) month period commencing on the date of execution hereof. For each Loan Year, the term "Premium Percentage" shall mean 3.0% for years 1 and 2; 2.0% for years 3 and 4; and, 1.0% for year 5. Any partial prepayment of principal shall not have the effect of suspending or deferring the monthly principal payments provided for, but the same shall continue to be due and payable on each date subsequent to any such partial prepayment of the principal, and shall operate to effect full payment of the principal at an earlier date.

Loan No: 63209

The repayment schedule and amount will be the following:

PAYMENT. Borrower will pay this loan in 119 regular payments of $3,255.36 each and one irregular last payment estimated at $6,286.10. Borrower's first payment is due May 28, 2011, and all subsequent payments are due on the same day of each month after that. Borrower's final payment will be due on April 28, 2021, and will be for all principal and all accrued interest not yet paid.

INTEREST CALCULATION METHOD. Interest on this loan is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this loan is computed using this method.

CONTINUING VALIDITY. Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

PRIOR TO SIGNING THIS AGREEMENT, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT. BORROWER AGREES TO THE TERMS OF THE AGREEMENT.

BORROWER:

CHILDREN'S CANCER FUND OF AMERICA

By: _____
Rick Perkins, CEO of Children's Cancer Fund of America

# EXHIBIT 2

SHERRY WITT
REGISTER OF DEEDS
KNOX COUNTY

WHEN RECORDED MAIL TO:
First Tennessee Bank National
Association
Business Lending Center
4990 Poplar Ave., Suite 200
Memphis, TN  38117

SEND TAX NOTICES TO:
Children's Cancer Fund of America
7714 Conner Road, Suite 108
Powell, TN  37849

OWNER:
Children's Cancer Fund of America
7714 Conner Road, Suite 108
Powell, TN  37849                                       FOR RECORDER'S USE ONLY

This Deed of Trust prepared by:

Name:  Commercial Credit Fulfillment
Company: First Tennessee Bank National Association
Address: 4990 Poplar Ave., Suite 200
City, State, ZIP: Memphis, TN 38117

## DEED OF TRUST

MAXIMUM  PRINCIPAL  INDEBTEDNESS  FOR  TENNESSEE  RECORDING  TAX  PURPOSES  IS
$320,000.00.

THIS DEED OF TRUST is dated February 28, 2008, among Children's Cancer Fund of America, whose
address is 7714 Conner Road, Suite 108, Powell, TN  37849 ("Grantor"); First Tennessee Bank
National Association, whose address is Business Lending Center, 4990 Poplar Ave., Suite 200,
Memphis, TN  38117 (referred to below sometimes as "Lender" and sometimes as "Beneficiary"); and
Thomas F. Baker, IV, whose address is 165 Madison Avenue, Memphis, TN  38103 (referred to below
as "Trustee").

CONVEYANCE AND GRANT.  For and in consideration of Five Dollars ($5.00) cash in hand paid, and other good and valuable
consideration, the receipt and sufficiency of which are hereby acknowledged, Grantor has bargained and sold, and does hereby
bargain, sell, convey and confirm unto the Trustee in trust, with Power of Sale, for the benefit of Lender as Beneficiary, all of
Grantor's right, title, and interest in and to the following described real property, together with all existing or subsequently
erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights
and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the
real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property")
located in Knox County, State of Tennessee:

   See EXHIBIT "A", which is attached to this Deed of Trust and made a part of this Deed of Trust as
   if fully set forth herein.

The Real Property or its address is commonly known as  2317 W Emory Road, Powell, TN  37849.

CROSS-COLLATERALIZATION.  In addition to the Note, this Deed of Trust secures all obligations, debts and liabilities, plus
interest thereon, of Grantor to Lender, or any one or more of them, as well as all claims by Lender against Grantor or any one or
more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether
voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated
or unliquidated, whether Grantor may be liable individually or jointly with others, whether obligated as guarantor, surety,
accommodation party or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by any
statute of limitations, and whether the obligation to repay such amounts may be or hereafter may become otherwise
unenforceable.

Grantor presently assigns to Lender (also known as Beneficiary in this Deed of Trust) all of Grantor's right, title, and interest in
and to all present and future leases of the Property and all Rents from the Property.  In addition, Grantor grants to Lender a
Uniform Commercial Code security interest in the Personal Property and Rents.

THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND
PERSONAL PROPERTY, IS GIVEN TO SECURE  (A)  PAYMENT OF THE INDEBTEDNESS AND  (B)  PERFORMANCE OF ANY AND
ALL OBLIGATIONS UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS DEED OF TRUST.  THIS DEED OF TRUST IS
GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

PAYMENT AND PERFORMANCE.  Except as otherwise provided in this Deed of Trust, Grantor shall pay to Lender all amounts
secured by this Deed of Trust as they become due, and shall strictly and in a timely manner perform all of Grantor's obligations
under the Note, this Deed of Trust, and the Related Documents.

POSSESSION AND MAINTENANCE OF THE PROPERTY.  Grantor agrees that Grantor's possession and use of the Property shall
be governed by the following provisions:

   Possession and Use.  Until the occurrence of an Event of Default, Grantor may  (1)  remain in possession and control of the
   Property;  (2)  use, operate or manage the Property; and  (3)  collect the Rents from the Property.

   Duty to Maintain.  Grantor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements,

Knox County        Page:  1 of 9
REC'D FOR REC 03/04/2008 10:50:02AM
RECORD FEE: $46.00
M. TAX: $365.70 T. TAX: $0.00

**200803040065675**

EXHIBIT
**2**

00004

Loan No: 9209

## DEED OF TRUST
(Continued)

Page 2

and maintenance necessary to preserve its value.

**Compliance With Environmental Laws.** Grantor represents and warrants to Lender that: (1) During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Deed of Trust. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Deed of Trust or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor. The provisions of this section of the Deed of Trust, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Deed of Trust and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Grantor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Deed of Trust.

**Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Grantor agrees neither to abandon or leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. If any Grantor is a corporation, partnership or limited liability company, transfer also includes any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of such Grantor. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Tennessee law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Deed of Trust:

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, special taxes, assessments, charges (including water and sewer), fines and impositions levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Deed of Trust, except for the lien of taxes and assessments not due and except as otherwise provided in this Deed of Trust.

**Right to Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials and the cost exceeds $10,000.00. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Deed of Trust.

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage



**DEED OF TRUST**
**(Continued)**

Loan No: ████9209                                                                 Page 3

endorsements on a replacement basis for the full insurable value covering all improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Grantor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Trustee and Lender being named as additional insureds in such liability insurance policies. Additionally, Grantor shall maintain such other insurance, including but not limited to hazard, business interruption, and boiler insurance, as Lender may reasonably require. Policies shall be written in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least thirty (30) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain Federal Flood Insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Property if the estimated cost of repair or replacement exceeds $1,000.00. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Deed of Trust. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Deed of Trust, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

**Grantor's Report on Insurance.** Upon request of Lender, however not more than once a year, Grantor shall furnish to Lender a report on each existing policy of insurance showing: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured, the then current replacement value of such property, and the manner of determining that value; and (5) the expiration date of the policy. Grantor shall, upon request of Lender, have an independent appraiser satisfactory to Lender determine the cash value replacement cost of the Property.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Grantor fails to comply with any provision of this Deed of Trust or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Deed of Trust or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Grantor to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Deed of Trust also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Deed of Trust:

**Title.** Grantor warrants that: (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Deed of Trust, and (b) Grantor has the full right, power, and authority to execute and deliver this Deed of Trust to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Trustee or Lender under this Deed of Trust, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Deed of Trust shall survive the execution and delivery of this Deed of Trust, shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid in full.

**CONDEMNATION.** The following provisions relating to condemnation proceedings are a part of this Deed of Trust:

**Proceedings.** If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Trustee or Lender in connection with the condemnation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Deed of Trust:

**Current Taxes, Fees and Charges.** Upon request by Lender, Grantor shall execute such documents in addition to this Deed of Trust and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Deed of Trust, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Deed of Trust.



Page: 3 OF 9
200803040065675

Loan No: ████9209

## DEED OF TRUST
### (Continued)

Page 4

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Deed of Trust or upon all or any part of the Indebtedness secured by this Deed of Trust; (2) a specific tax on Grantor which Grantor is authorized or required to deduct from payments on the Indebtedness secured by this type of Deed of Trust; (3) a tax on this type of Deed of Trust chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Grantor.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Deed of Trust, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Deed of Trust as a security agreement are a part of this Deed of Trust:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Grantor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. In addition to recording this Deed of Trust in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Deed of Trust as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property. Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Deed of Trust may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Deed of Trust.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Deed of Trust:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Grantor's obligations under the Note, this Deed of Trust, and the Related Documents, and (2) the liens and security interests created by this Deed of Trust as first and prior liens on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Grantor shall well and truly pay and perform the obligations at the time and times, and in the manner mentioned in this Deed of Trust, and shall well and truly abide by and comply with each and every term, covenant and condition set forth in this Deed of Trust, then this conveyance shall be and become null and void and the Trustee shall convey the Property to the Grantor by release deed at Grantor's expense.

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Deed of Trust:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Deed of Trust or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**Compliance Default.** Failure to comply with any other term, obligation, covenant or condition contained in this Deed of Trust, the Note or in any of the Related Documents.

**Default on Other Payments.** Failure of Grantor within the time required by this Deed of Trust to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Default in Favor of Third Parties.** Should Grantor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Grantor's property or Grantor's ability to repay the Indebtedness or perform their respective obligations under this Deed of Trust or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Deed of Trust or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Deed of Trust or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Insolvency.** The dissolution or termination of Grantor's existence as a going business, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Breach of Other Agreement.** Any breach by Grantor under the terms of any other agreement between Grantor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any



Page: 4 OF 9

**200803040065675**



Loan No: ~~9209~~

**DEED OF TRUST**
**(Continued)**

Page 5

indebtedness or other obligation of Grantor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness. In the event of a death, Lender, at its option, may, but shall not be required to, permit the guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Deed of Trust, at any time thereafter, Trustee or Lender may exercise any one or more of the following rights and remedies:

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Deed of Trust, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Grantor, the same being expressly waived, to declare the entire Indebtedness immediately due and payable, including (if permitted by applicable law) any prepayment penalty for which Grantor may be obligated.

**Foreclosure.** With respect to all or any part of the Real Property, (a) the Trustee, at the Lender's request, shall have the right to enter and take possession of the Real Property and to sell all or part of the Real Property, at public auction, to the highest bidder for cash, free from equity of redemption, and any statutory or common law right of redemption, homestead, dower, marital share, and all other exemptions, after giving notice of the time, place and terms of such sale and of the Real Property to be sold as required by law, or (b) the Trustee or the Lender shall have the right to foreclose by judicial proceeding, in accordance with and to the full extent provided by applicable law.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Collect Rents.** Lender shall have the right, without notice to Grantor to take possession of and manage the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Grantor irrevocably designates Lender as Grantor's attorney-in-fact to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to make application to a court of competent jurisdiction to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property prior to foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Tenancy at Sufferance.** If Grantor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Grantor, Grantor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Trustee or Lender shall have any other right or remedy provided in this Deed of Trust or the Note or available at law or in equity.

**Notice of Sale.** Lender shall give Grantor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Sale of the Property.** To the extent permitted by applicable law, Grantor hereby waives any and all rights to have the Property marshalled, the equity of redemption, any statutory or common law right of redemption, homestead, dower, marital share and all other exemptions and other rights which might defeat, reduce or affect the right of the Lender to sell the Real Property or the Personal Property for the collection of the Indebtedness. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph, including but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Trustee shall give notice of sale by public advertisement in the county in which the Property is located for the time and in the manner provided by applicable law, and Lender or Trustee shall mail a copy of the notice of sale to Grantor. Trustee, without demand on Grantor, shall sell the Property at public auction to the highest bidder at the time and under the terms designated in the notice of sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying that Real Property without any covenant or warranty, express or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. If the Property is sold pursuant to this paragraph, Grantor, or any person holding possession of the Real Property through Grantor, shall immediately surrender possession of the Real Property to the purchaser at the sale. If possession is not surrendered, Grantor or such person shall be a tenant at will of the purchaser and hereby agrees to pay the purchaser the reasonable rental value of the Real Property after sale.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Deed of Trust, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports



200803040065675



**DEED OF TRUST**
**(Continued)**

(including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**Rights of Trustee.** Trustee shall have all of the rights and duties of Lender as set forth in this section.

**POWERS AND OBLIGATIONS OF TRUSTEE.** The following provisions relating to the powers and obligations of Trustee are part of this Deed of Trust:

**Powers of Trustee.** In addition to all powers of Trustee arising as a matter of law, Trustee shall have the power to take the following actions with respect to the Property upon the written request of Lender and Grantor: (a) join in preparing and filing a map or plat of the Real Property, including the dedication of streets or other rights to the public; (b) join in granting any easement or creating any restriction on the Real Property; and (c) join in any subordination or other agreement affecting this Deed of Trust or the interest of Lender under this Deed of Trust.

**Indemnification of Trustee.** Grantor agrees to indemnify Trustee for all reasonable costs, charges, and attorneys' fees incurred by Trustee if Trustee is made a party to or intervenes in any action or proceeding affecting this Deed of Trust or the Property, or the interest of the Trustee or the Lender under this Deed of Trust.

**Obligations to Notify.** Trustee shall not be obligated to notify any other party of a pending sale under any other trust deed or lien, or of any action or proceeding in which Grantor, Lender, or Trustee shall be a party, unless the action or proceeding is brought by Trustee.

**Trustee.** Trustee shall meet all qualifications required for Trustee under applicable law. In addition to the rights and remedies set forth above, with respect to all or any part of the Property, the Trustee shall have the right to foreclose by notice and sale, and Lender shall have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law. Trustee shall have the authority, in Trustee's discretion, to employ all proper agents and attorneys in the execution of Trustee's duties under this Deed of Trust and in conducting any sale made pursuant to the terms of this Deed of Trust and to pay for the services rendered by such agents and attorneys out of the proceeds of the sale of the Property. If no sale is made, or if the proceeds of the sale are insufficient to pay such agents and attorneys, then Grantor agrees to pay the cost of such services. The parties in interest hereby waive the necessity of Trustee making oath, filing inventory, or giving bond as security for the execution of this trust, as may be required by the laws of Tennessee.

**Successors and Assigns.** In the event of the death, refusal, or of inability for any cause, on the part of Trustee named in this Deed of Trust, or of any successor trustee, to act at any time when action under the foregoing powers and trust may be required, or for any other reason satisfactory to Lender, Lender is authorized, either in Lender's own name or through an attorney or attorneys in fact appointed for that purpose, by written instrument duly registered, to name and appoint a successor or successors to execute this trust, such appointment to be evidenced by writing, duly acknowledged; and when such writing shall have been registered, the substituted trustee named therein shall thereupon be vested with all the right and title, and clothed with all the power of the Trustee named in this Deed of Trust and such like power of substitution shall continue so long as any part of the debt secured by this Deed of Trust remains unpaid.

**NOTICES.** Any notice required to be given under this Deed of Trust, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Deed of Trust. All copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust shall be sent to Lender's address, as shown near the beginning of this Deed of Trust. Any party may change its address for notices under this Deed of Trust by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**EXCLUSION FROM INDEBTEDNESS.** Excluded from indebtedness shall be any indebtedness governed by the Federal Truth in Lending Act.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Deed of Trust:

**Amendments.** This Deed of Trust, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Deed of Trust. No alteration of or amendment to this Deed of Trust shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.** If the Property is used for purposes other than Grantor's residence, Grantor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Grantor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Caption Headings.** Caption headings in this Deed of Trust are for convenience purposes only and are not to be used to interpret or define the provisions of this Deed of Trust.

**Merger.** There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Governing Law.** This Deed of Trust will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Tennessee without regard to its conflicts of law provisions. This Deed of Trust has been accepted by Lender in the State of Tennessee.

**Choice of Venue.** If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of Shelby County, State of Tennessee.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Deed of Trust unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Deed of Trust shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Deed of Trust. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Deed of Trust, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Deed of Trust to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Deed of Trust. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Deed of Trust shall not affect the legality, validity or enforceability of any other provision of this Deed of Trust.

RMP

## DEED OF TRUST
### (Continued)

**Successors and Assigns.** Subject to any limitations stated in this Deed of Trust on transfer of Grantor's interest, this Deed of Trust shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Deed of Trust and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Deed of Trust or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Deed of Trust.

**Waive Jury.** All parties to this Deed of Trust hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

**Miscellaneous Waivers.** Grantor waives all right of homestead, equity of redemption, statutory right of redemption, and relinquishes all other rights and exemptions of every kind, including, but not limited to, a statutory right to an elective share in the Property.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Deed of Trust. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Deed of Trust shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Beneficiary.** The word "Beneficiary" means First Tennessee Bank National Association, and its successors and assigns.

**Borrower.** The word "Borrower" means Children's Cancer Fund of America and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Deed of Trust.** The words "Deed of Trust" mean this Deed of Trust among Grantor, Lender, and Trustee, and includes without limitation all assignment and security interest provisions relating to the Personal Property and Rents.

**Default.** The word "Default" means the Default set forth in this Deed of Trust in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., the Hazardous Waste Management Substances Act of 1998, T.C.A., 68-212-201, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Deed of Trust in the events of default section of this Deed of Trust.

**Grantor.** The word "Grantor" means Children's Cancer Fund of America.

**Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Trustee or Lender to enforce Grantor's obligations under this Deed of Trust, together with interest on such amounts as provided in this Deed of Trust. Specifically, without limitation, Indebtedness includes all amounts that may be indirectly secured by the Cross-Collateralization provision of this Deed of Trust.

**Lender.** The word "Lender" means First Tennessee Bank National Association, its successors and assigns.

**Note.** The word "Note" means the promissory note dated February 28, 2008, **in the original principal amount of $320,000.00** from Grantor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. The maturity date of the Note is February 28, 2018.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Deed of Trust.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

**Trustee.** The word "Trustee" means Thomas F. Baker, IV, whose address is 165 Madison Avenue, Memphis, TN 38103 and any substitute or successor trustees.

Loan No: ~~9209~~

**DEED OF TRUST**
(Continued)

Page 8

GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS DEED OF TRUST, AND GRANTOR AGREES TO ITS TERMS.

GRANTOR:

CHILDREN'S CANCER FUND OF AMERICA

By: _____
Rose Perkins, CEO of Children's Cancer Fund of America

---

## CORPORATE ACKNOWLEDGMENT

STATE OF _____TENNESSEE_____          )
                                      ) SS
COUNTY OF _____KNOX_____              )

    Before me, _____the undersigned_____, a Notary Public in and for the State and County aforesaid, personally appeared Rose Perkins, with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who, upon oath, acknowledged himself or herself to be the CEO of Children's Cancer Fund of America, the within-named bargainor, a corporation, and that he or she as such CEO of Children's Cancer Fund of America, being duly authorized so to do, executed the foregoing instrument for the purposes therein contained, by signing the name of the corporation by himself or herself as such CEO of Children's Cancer Fund of America.

    WITNESS my hand and seal at office, on the _____28th_____ day of _____February_____, 20_08_.

My Commission Expires: _____10-31-2011_____          _____
                                                        Notary Public

LINDA REITZ HAMM
STATE OF TENNESSEE
NOTARY PUBLIC
KNOX COUNTY

LASER PRO Lending, Ver. 5.36.10.001  Copr. Harland Financial Solutions, Inc. 1997, 2008.  All Rights Reserved.  - TN  C:\HLAB\CISTHR\CPL\P1601.FC  TR-49359  PR-8

---

EXHIBIT 'A'

SITUATED in District Six (6) of Knox County, Tennessee, and without the corporate limits of the City of Knoxville, Tennessee, and being known and designated as Property of Dr. Cecil E. Russell, Jr., as shown by map of same record in Map Cabinet H, Slide 27-A, in the Register's Office for Knox County, Tennessee, to which map specific reference is hereby made for a more particular description.

BEING the same property conveyed to Children's Cancer Fund of America, Inc. from Paul G. Hibben, Jr., married and Kevin Mathews, unmarried by Warranty Deed dated February 28, 2008 of record in Instrument _200803040065674_ in the Knox County Register of Deeds Office.



Page 9 OF 9

200803040065675

RMP

SHERRY WITT
REGISTER OF DEEDS
KNOX COUNTY

WHEN RECORDED MAIL TO:
First Tennessee Bank National
Association
P.O. Box 1986
Memphis, TN  38101

SEND TAX NOTICES TO:
Children's Cancer Fund of America
2317 West Emory Road
Powell, TN  37849

OWNER:
Children's Cancer Fund of America
2317 West Emory Road
Powell, TN  37849

FOR RECORDER'S USE ONLY

This Modification of Deed of Trust prepared by:

Name:  Commercial Credit Fulfillment
Company:  First Tennessee Bank National Association
Address:  300 Court Ave., 3rd Floor
City, State, ZIP: Memphis, TN 38103

## MODIFICATION OF DEED OF TRUST

MAXIMUM PRINCIPAL INDEBTEDNESS FOR TENNESSEE RECORDING TAX PURPOSES IS $257,100.42.

THIS MODIFICATION OF DEED OF TRUST dated May 9, 2011, is made and executed between Children's Cancer Fund of America, whose address is 2317 West Emory Road, Powell, TN  37849 ("Grantor") and First Tennessee Bank National Association, whose address is Business Lending Center, 300 Court Ave., 3rd Floor, Memphis, TN  38103 ("Lender").

DEED OF TRUST. Lender and Grantor have entered into a Deed of Trust dated February 28, 2008 (the "Deed of Trust") which has been recorded in Knox County, State of Tennessee, as follows:

WHEREAS, to secure an indebtedness evidenced by a Note dated as of February 28, 2008, in the original principal amount of THREE HUNDRED TWENTY THOUSAND AND NO/100 Dollars ($320,000.00) executed by Grantor to Lender and all renewals, extensions, amendments, and modifications thereof, Grantor executed to Trustee a Deed of Trust dated February 28, 2008 and filed of record under Instrument 200803040065675, Register's Office for Knox County, Tennessee

REAL PROPERTY DESCRIPTION. The Deed of Trust covers the following described real property located in Knox County, State of Tennessee:

See Exhibit "A", which is attached to this Modification and made a part of this Modification as if fully set forth herein.

The Real Property or its address is commonly known as  2317 W. Emory Road, Powell, TN  37849.

MODIFICATION. Lender and Grantor hereby modify the Deed of Trust as follows:

WHEREAS, Borrower has this day executed to Lender a Note in the principal amount of Four Hundred Sixty Five Thousand ($465,000.00) increasing the overall indebtedness on this Note to Five Hundred Seventy Seven Thousand One Hundred Dollars and Forty Two Cents ($577,100.42) which amends, modifies, extends and/or renews the Note and which extends the maturity date to April 28, 2021 ( the "Modified Note"); and the parties hereto desire to amend the Deed of Trust to provide that the Deed of Trust shall secure the Modified Note and all extensions, renewals, amendments, and modifications thereto.

Knox County        Page: 1 of 4
REC'D FOR REC 06/02/2011 11:42:39AM
RECORD FEE: $23.00
T. TAX: $295.67 T. TAX: $0.00
201106020069623

00013

Loan No: ██████9209

### MODIFICATION OF DEED OF TRUST
(Continued)

Page 2

**CONTINUING VALIDITY.** Except as expressly modified above, the terms of the original Deed of Trust shall remain unchanged and in full force and effect. Consent by Lender to this Modification does not waive Lender's right to require strict performance of the Deed of Trust as changed above nor obligate Lender to make any future modifications. Nothing in this Modification shall constitute a satisfaction of the promissory note or other credit agreement secured by the Deed of Trust (the "Note"). It is the intention of Lender to retain as liable all parties to the Deed of Trust and all parties, makers and endorsers to the Note, including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, shall not be released by virtue of this Modification. If any person who signed the original Deed of Trust does not sign this Modification, then all persons signing below acknowledge that this Modification is given conditionally, based on the representation to Lender that the non-signing person consents to the changes and provisions of this Modification or otherwise will not be released by it. This waiver applies not only to any initial extension or modification, but also to all such subsequent actions.

GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MODIFICATION OF DEED OF TRUST AND GRANTOR AGREES TO ITS TERMS. THIS MODIFICATION OF DEED OF TRUST IS DATED MAY 9, 2011.

GRANTOR:

CHILDREN'S CANCER FUND OF AMERICA

By: _____
Rose Perkins, CEO of Children's Cancer Fund of America

LENDER:

FIRST TENNESSEE BANK NATIONAL ASSOCIATION

x _____
Authorized Officer

2011106020069623

Loan No: ████9209

## MODIFICATION OF DEED OF TRUST
### (Continued)

Page 3

---

### CORPORATE ACKNOWLEDGMENT

STATE OF _____TN_____ )
                            ) SS
COUNTY OF _____Knox_____ )

Before me, ___Keely L. Ritchie___, a Notary Public in and for the State and County aforesaid, personally appeared Rose Perkins, with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who, upon oath, acknowledged himself or herself to be the CEO of Children's Cancer Fund of America, the within-named bargainor, a corporation, and that he or she as such CEO of Children's Cancer Fund of America, being duly authorized so to do, executed the foregoing instrument for the purposes therein contained, by signing the name of the corporation by himself or herself as such CEO of Children's Cancer Fund of America.

WITNESS my hand and seal at office, on the ___9th___ day of ___May___, 20 11

My Commission Expires: ___10/9/2013___                    _____
                                                          Notary Public

---

### LENDER ACKNOWLEDGMENT

STATE OF _____TN_____ )
                            ) SS
COUNTY OF _____Knox_____ )

Before me, ___R J Williams___, a Notary Public in and for the State and County aforesaid, personally appeared ___Keely Ritchie___, with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who, upon oath, acknowledged himself or herself to be the ___V.P. BBRM___ of First Tennessee Bank National Association, the within-named bargainor, a corporation, and that he or she as such ___V.P. BBRM___, being duly authorized so to do, executed the foregoing instrument for the purposes therein contained, by signing the name of the corporation by himself or herself as such ___V.P. BBRM___.

WITNESS my hand and seal at office, on the ___9th___ day of ___May___, 20 11

My Commission Expires: ___06/02/2012___                    _____
                                                          Notary Public

---

LASER PRO Lending, Ver. 5.55.00.002  Copr. Harland Financial Solutions, Inc. 1997, 2011.   All Rights Reserved.
C:\BLAS\DISTRIB\CFI\LPL\G202.FC  TR-66207  PR-83

Page: 3 OF 4
201106020069623

Title No.: 11-2349

**EXHIBIT "A"**
**LEGAL DESCRIPTION**

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE COUNTY OF KNOX, STATE OF TENNESSEE, AND IS DESCRIBED AS FOLLOWS:

SITUATED in District Six (6) of Knox County, Tennessee, and without the corporate limits of the City of Knoxville, Tennessee, and being known and designated as Property of Dr. Cecil E. Russell, Jr., as shown by map of same of record in Map Cabinet H, Slide 27-A, in the Register's Office for Knox County, Tennessee, to which map specific reference is hereby made for a more particular description.

BEING the same property conveyed to Children's Cancer Fund of America, Inc., a Tennessee not for profit corporation, by Warranty Deed from Kevin Mathews, unmarried, and Paul G. Hibben, Jr., married, dated the 28th day of February, 2008, of record in Instrument 20080304085674, in the Register's Office for Knox County, Tennessee.

Property Address: 2317 W Emory Road, Powell, Tennessee 37849.

Tax Parcel Identification Number: 056NA 008.00

ALTA Commitment (Exhibit A-Legal Description) (5/17/06)          (CHILDREN'S CANCER FUND.PFD/11-2349/7)

Page: 4 OF 4
2011 06020069623

EXHIBIT 3

STYLE OF ACCOUNT
Childrens Cancer Fund of America

ACCOUNT NUMBER
_____0448

DATE COMPLETED
12/19/14

☐ New
☐ Existing
☐ AIO
☐ Reg CK
☐ CK INS
☐ ST/SR
☐ CK INT
☐ IV SV

ADDRESS
2317 W. Emory Rd. Powell TN 37849

**FIRST TENNESSEE**

FINANCIAL CENTER NAME

FINANCIAL CENTER #
5338

☐ CD
☐ IRA FIX
☐ IRA VAR
☐ PBC
☐ PBS
☐ PBC-SR
☐ PBS-SR
☐ EOM
☐ BASIC
☐ BUS SV
☐ COIG
☐ PF (L)
☐ PF (US)
☐ EACH

SOCIAL SECURITY NUMBER / EIN
_____0410

RESPON. CENTER

OFFICER CODE

DATE OF BIRTH

Should this account be in the names of, payable to, or subject to withdrawal by two or more natural persons, all signers below agree that ownership interests are as shown in the account title above or as checked below.
☐ Joint tenants with right of survivorship ☐ Additional authorized signer (Power of Attorney) ☑ SIG

All signers below acknowledge receipt of the Depositor Agreement with disclosures for the Account indicated, and agree to be bound by its terms as well as any changes or additions hereafter adopted by bank. The following taxpayer certification is provided by the person signing in space #1.
    Under penalties of perjury, I certify that: (1) The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and (2) I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and (3) I am a U.S. citizen or other U.S. person (defined in W-9 instructions), and (4) The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.
    Certification Instructions. You must cross out clause (2) above before signing this card if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. Cross out clause (3) if you are not a U.S. person.
    The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.

SIGN HERE (exactly as Accounts is read and as checks or withdrawals are to be signed).

1. X _Rose Perkins_

2. X _Brenda J. Howard_

ACCOUNT OPENED BY _Amy Moffitt_

INITIAL DEPOSIT $ 50.00

SOURCE OF FUNDS

CK INQ N.R.

PAY O.D. PER

HOME PHONE

REC'D DEC 23 2014

BUSINESS PHONE

EMPLOYED BY/ POSITION

I.D.

EMPLOYMENT VERIFICATION

I.D.

CONTACT NAME _Brenda Howard_

CONTACT PHONE #

**EXHIBIT**
**3**

00017



*Bank*

*Depositor*

*Agreement*

*And*

*Disclosures*



(Rev. 10/13)

00018

## USA PATRIOT ACT NOTICE

**IMPORTANT INFORMATION ABOUT PROCEDURES FOR OPENING A NEW ACCOUNT** - To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account. What this means for you: When you open an account, we will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

## TERMS AND CONDITIONS
## OF YOUR ACCOUNT

**AGREEMENT** - This document, along with any other documents we give you pertaining to your account(s), is a contract that establishes rules which control your account(s) with us. Please read this carefully and retain it for future reference. If you sign the signature card or open or continue to have your account with us, you agree to these rules. You will receive a separate schedule of rates, qualifying balances, and fees if they are not included in this document. Should the information contained in this document differ from that contained in the separately provided materials, the separately provided information will control. If you have any questions, please call us.

This agreement applies both to business and consumer (personal) accounts, except where business accounts are expressly excluded, and is subject to applicable federal laws and the laws of the state where the branch at which you have your account is located (except to the extent that this agreement can and does vary such rules or laws). If you opened your account online, it is subject to Tennessee law. The body of state and federal law that governs our relationship with you, however, is too large and complex to be reproduced here. The purpose of this document is to:

(1) summarize some laws that apply to common transactions;
(2) establish rules to cover transactions or events which the law does not regulate;
(3) establish rules for certain transactions or events which the law regulates but permits variation by agreement; and
(4) give you disclosures of some of our policies to which you may be entitled or in which you may be interested.

If any provision of this document is found to be unenforceable according to its terms, all remaining provisions will continue in full force and effect. We may permit some variations from our standard agreement, but any customer-initiated changes to the agreement, including changes to language on standardized Bank authorization documents, will not be effective unless approved in writing by a Bank President, Executive Vice President or Senior Vice President. The agreement may not otherwise be modified.

"Party" means a person who, by the terms of an account, has a present right, subject to request, to payment from the account other than as a beneficiary or convenience signer (agent).

As used in this document the words "we," "our," "us," and "Bank" mean First Tennessee Bank National Association or its division, First Horizon Bank, and the words "you" and "your" mean the account holder(s) and anyone else with the authority to deposit, withdraw, or exercise control over the funds in the account. However, this agreement does not intend, and the terms "you" and "your" should not be interpreted, to expand an individual's responsibility for an organization's liability. If this account is owned by a corporation, partnership or other organization, individual liability is determined by the laws generally applicable to that type of organization. The headings in this document are for convenience or reference only and will not govern the interpretation of the provisions. Unless it would be inconsistent to do so, words and phrases used in this document should be construed so the singular includes the plural and the plural includes the singular.

2

The relationship between you and the Bank is that of independent contractors. We act as a fiduciary only when we are the legal accountholder, such as when we are named a trustee or escrow agent. **FOR CONSUMER (PERSONAL) ACCOUNTS: PLEASE REVIEW THE ARBITRATION PROVISION BEGINNING ON PAGE 15 OF THIS AGREEMENT IN ITS ENTIRETY.**

**LIABILITY** - You agree, for yourself (and the person or entity you represent if you sign as a representative of another) to the terms of this account and the schedule of charges. You authorize us to deduct these charges, without notice to you, directly from the account balance as accrued. You will pay any additional reasonable charges for services you request which are not covered by this agreement. You agree not to use your account(s) for any illegal purpose, including but not limited to the authorization of any unlawful internet gambling transactions.

Each of you also agrees to be jointly and severally (individually) liable for any account shortage resulting from charges or overdrafts, whether caused by you or another with access to this account. This liability is due immediately, and can be deducted directly from the account balance whenever sufficient funds are available. You have no right to defer payment of this liability, and you are liable regardless of whether you signed the item or benefited from the charge or overdraft. Each of you appoints each other person signing the signature card as attorney-in-fact for all matters involving the account, rendering each of you personally liable for the other's account activity, including but not limited to, receiving and giving notice, issuing account information, linking other accounts of a signer (even if only owned by the other signer), pledging or entering separate agreements affecting the account, stop payment orders, deposits, appointing or removing additional signers, and withdrawing funds from, charging or terminating the account.

Each of you authorize Bank, or someone acting on our behalf, to contact you using any telephone/contact numbers you provided to us in connection with your account(s) whether the number is to a paging, cell phone, or specialized or common carrier mobile radio service, or any other service for which you may be charged for the contact, and to contact you by use of voice, text, email and prerecorded/artificial voice messages or automatic dialing devices. Your authorization and information may be relied on and used for debt collection purposes.

You will be liable for our costs as well as for our reasonable attorneys' fees, to the extent permitted by law, whether incurred as a result of collection or in any other dispute involving your account. This includes, but is not limited to, disputes between you and another joint owner; you and an authorized signer or similar party; or a third party claiming an interest in your account. This also includes any action that you or a third party takes regarding the account that causes us, in good faith, to seek the advice of an attorney, whether or not we become involved in the dispute. All costs and attorneys' fees can be deducted from your account when they are incurred, without notice to you.

Our liability for losses you incur in connection with your account is limited to actual damages proved that are proximately caused by our failure to exercise ordinary care. Notwithstanding, if we make an error in your favor by excessively crediting or insufficiently debiting your account for any reason, including but not limited to the giving of cash or credit in excess of a corresponding account debit, you agree that you immediately owe us the amount in error, whether you relied on the error or not.

For business account owners, you agree to waive your rights to a jury and to punitive and exemplary damages with respect to the trial of a civil action or cross-action filed against us concerning this account. For consumer account owners, you agree to waive your rights to a jury and to punitive and exemplary damages and further agree to be subject to all parts of the arbitration provision beginning on page 15 of this agreement. Damages for any breach of this agreement are limited to those which are direct and lie in contract, and shall exclude indirect and consequential damages. Also excluded are damages in tort, including but not limited to those for emotional distress, unless caused by a willful and malicious act, which in the case of the unauthorized disclosure of private or confidential

3

00019

charges for replacement checks, travelers' checks and money orders. Examples of when 30 days' advance notice is legally required include consumer account increases in monthly service charges and in minimum balances to earn interest or avoid service charges.

If you find any changes unacceptable, you have the option of terminating this account. If you do not do so, you will be deemed to have approved and ratified the new fees, charges or other provisions.

**TERMINATION** - You and we each have authority to terminate the account unilaterally, without cause. Notice is necessary to effect termination, but termination may become effective at the time notice is given. Notwithstanding, we can require seven days' advance notice of withdrawal for interest bearing accounts. If we initiate termination, notice is effective when you receive it orally or in writing, or at the close of the third banking day following the date of our deposit with the U.S. Postal Service of a notification letter with first class postage affixed addressed to your account address, whether or not such notice is actually received.

If we provide notice by mail, ordinarily we will retain any checking account funds three or more banking days after such mailing in order to honor checks or drafts presented during such period. We, however, are under no obligation during or after termination to pay from uncollected funds, or from funds subject to court order or our right of setoff. We will promptly remit any paid-in, unencumbered funds remaining in the account when we close it or when we receive any uncollected items paid-in after the account is closed. Your obligation for any account deficiency is not extinguished when the account is closed, whether or not we initiate termination. We will not be liable for dishonoring any item presented for payment on or after the banking day on which the notice of termination is provided, even if unencumbered funds are present in the account. Notwithstanding, we may terminate a zero or negative balance account without notice if you have not made a deposit, payment or withdrawal from the account in 30 days.

**DUTY OF EXAMINATION, UNAUTHORIZED TRANSACTIONS** - You are in the best position to discover any forgeries, alterations and unauthorized signatures or orders affecting the account. Therefore, you agree: (1) to exercise reasonable care in examining the statement and any enclosed items we may furnish, and (2) to report promptly in writing the existence of any forgeries, material alterations or unauthorized signatures of any maker or endorser. "Unauthorized signature" includes, but is not limited to, a missing signature.

We will not be liable if items were forged or altered so that the fraud could not be detected by a reasonable person exercising ordinary care. Nor will we be liable for losses due to forgery, unauthorized signatures or alterations to the extent that your negligence substantially contributed to such losses. Examples of such negligence would include, but not be limited to, providing your account number over the telephone, failing adequately to safeguard your checkbook and, with respect to business accounts, failing adequately to investigate the background of employees with access to your bank records, failing adequately to supervise such employees, and inadequate internal financial controls or audits. Nor will we be liable for such losses on business account checks which bear the same check number as do others used with the same account.

We properly may refuse to give you credit for any forged, altered or unauthorized item drawn on your account, including the posting of a substitute check to your account, or any unauthorized withdrawal, if you do not provide a suitable affidavit supporting your claim. Further, you agree to the following limitations.

You may not assert a claim against us for the forgery, material alteration, unauthorized signature or unauthorized order of an item we paid in good faith, including a substitute check posted to your account, if you did not provide us written notice with a reasonable time, not to exceed 40 days after the earliest of the following: (1) we mailed a statement (or first made available an electronic record pursuant to an electronic banking agreement) containing sufficient identification of the item (for example, a check is sufficiently identified by check amount and serial number), and (2) you first learned of the item's forgery, material alteration, unauthorized signature or unauthorized order. Further, you may not

assert a claim for a later forgery, material alteration, unauthorized signature or unauthorized order on an account if made by the same wrongdoer as an earlier forgery, material alternation, unauthorized signature or unauthorized order and if you did not provide the notice required above upon the earlier reportable instance. For business accounts, Bank requests that you enroll in the Bank's positive pay service designed to reduce the risk of payment of unauthorized items. If you reject Bank's request with respect to one or more of your business accounts, referred to as a non-participating business account, you are precluded from asserting any claim against the Bank arising from payment of unauthorized items on non-participating business accounts, regardless of how promptly you review account statements or other account information made available to you and regardless of how promptly you notify Bank of payment of unauthorized items.

You may not assert against us other types of claims concerning transactions or charges reflected, or which you believe should have been reflected in your statement unless you provide us written notice within a reasonable time not to exceed 40 days after the earlier of our mailing the statement, providing an electronic record, or your learning of the transaction or charge, except under the following circumstances: (1) an unauthorized wire transfer claim is precluded if not made within a reasonable time, not to exceed 14 days after we mailed a transfer advice or statement reflecting the transfer, or, if earlier, the transfer became known to you, (2) a claim concerning electronic transfers for consumer accounts is precluded if not made within 60 days after we mailed the statement, or (3) a shorter time is prescribed by law or by a separate agreement between you and us.

Notices required by this section of the agreement are a condition precedent to filing a lawsuit or filing a claim in arbitration in accordance with the arbitration provision beginning on page 15 of this agreement, which must in all cases be brought within one year of our mailing the statement or providing an electronic record.

Contact us if you do not receive your regular statement.

**INTEREST** - Interest will begin to accrue no later than the business day we receive credit for the deposit of non-cash items (such as checks) into the following accounts listed in the fee schedule as paying interest: (1) checking accounts, (2) consumer savings accounts, and (3) consumer time deposit accounts. With respect to other deposit accounts that pay interest, interest will begin to accrue no later than such time we consider the checks to have been collected. Accounts presumed abandoned under the law of the depository state do not pay interest. Additional terms regarding the payment of interest are further described in the Consumer Account Disclosures section of this agreement.

**ACCOUNT TRANSFER** - This account may not be transferred or assigned without our prior written consent.

**RECLAMATION** - When the U.S. Treasury seeks reclamation for items or electronic transfers previously credited to your account or paid to you, we may debit your account or otherwise collect the amount sought, and you agree to indemnify us for our resulting losses.

**SETOFF** - We may (without prior notice and when permitted by law) set off the funds in this account against any due and payable debt you owe us now or in the future, by any of you having the right of withdrawal, to the extent of such persons' or legal entity's right to withdraw. If, however, the debt is the result of an award in arbitration pursuant to the arbitration provision beginning on page 15 of this agreement, our right of setoff does not accrue until all applicable dates for appeals, to either state or federal courts or other forums, have expired. If the debt arises from a note, "any due and payable debt" includes the total amount of which we are entitled to demand payment under the terms of the note at the time we set off, including any balance the due date for which we properly accelerate under the note.

This right of setoff does not apply to this account if: (a) it is a Health Savings Account or tax-deferred retirement account for which setoff is prohibited by law, or (b) the debt is created by a consumer credit transaction under a credit card plan (but this does not affect our rights under any consensual security interest), or (c) the debtor's right of withdrawal only arises in a representative capacity. We will not be liable

00020

for the dishonor of any check when the dishonor occurs because we set off a debt against this account. You agree to hold us harmless from any claim arising as a result of our exercise of our right of setoff.

**AUTHORIZED SIGNER** - The authorized signer (also referred to as convenience signer, agent or additional authorized signer) is authorized to operate the account and to conduct transactions on the owner's behalf. The owner does not give up any rights to act on the account, and the authorized signer may not in any manner affect the rights of the owner or beneficiaries, if any, other than by withdrawing funds from the account. The owner is responsible for any transactions of the authorized signer. We undertake no obligation to monitor transactions to determine that they are on the owner's behalf. In Tennessee, an additional authorized signer has power of attorney with respect to the account.

The owner may terminate the authorization at any time, and the authorization is automatically terminated by the death of the owner. However, we may continue to honor the transactions of the authorized signer until: (a) we have received written notice or have actual knowledge of the termination of authority, and (b) we have a reasonable opportunity to act on that notice or knowledge. We may refuse to accept an authorized signer.

**RESTRICTIVE LEGENDS** - The automated processing of the large volume of checks we receive prevents us from inspecting or looking for special instructions or "restrictive legends" on every check. Examples of restrictive legends placed on checks are "must be presented within 90 days" or "not valid for more than $1,000.00." For this reason, we are not required to honor any restrictive legend placed on checks you write. We are not responsible for any losses, claims, damages, or expenses that result from your placement of these or other special instructions on your checks.

**PAYMENT ORDER OF ITEMS** - The law permits us to pay items (such as checks or drafts) drawn on your account in any order. If more than one check or order is presented for payment on the same banking day, and the aggregate amount exceeds the available balance, you agree we may pay, accept, or charge them in any order we choose. We may also debit your account on or after receiving notice of an electronic fund transfer, wire order or other transaction debiting your account. The amounts of the overdraft and NSF fees are disclosed elsewhere. We encourage you to make careful records and practice good account management. This will help you to avoid writing checks or drafts without sufficient funds and incurring the resulting fees.

Assuming all deposit and withdrawal transactions below are made and received by us within the same business day (note: it may take up to 3 days for certain debit card purchases to be presented to us from the retailer), they will post to your account in the following order:

1. Credits in descending dollar amount
2. Bank initiated debits in descending order amount
3. Non-returnable debits in time stamp order (e.g., wires, ACH pre-fund transactions, debit card, ATM withdrawal, internal funds transfers, bill pay)
4. Non-returnable debits not time stamped (e.g., "on us" cashed checks in check number order)
5. Returnable debits. ACH debit (non pre-fund transactions) by PAR number then checks in check number order
6. Post-system generated transactions: service charges and fees

**ACH AND WIRE TRANSFERS** - This agreement is subject to Article 4A of the Uniform Commercial Code - Fund Transfers as adopted in the state in which you have your account with us. Additional terms regarding funds transfers are described in the Funds Transfer section of this agreement. If you originate a fund transfer and you identify by name and number a beneficiary financial institution, an intermediary financial institution or a beneficiary, we and every receiving or beneficiary financial institution may rely on the identifying number to make payment. We may rely on the number even if it identifies a financial institution, person or account other than the one named. You agree to be bound by automated clearing house association rules. These rules provide, among

other things, that payments made to you, or originated by you, are provisional until final settlement is made through a Federal Reserve Bank or payment is otherwise made as provided in Article 4A-403(a) of the Uniform Commercial Code. If we do not receive such payment, we are entitled to a refund from you in the amount credited to your account and the party originating such payment will not be considered to have paid the amount so credited. If we receive a credit to an account you have with us by wire or ACH, we are not required to give you any notice of the payment order or credit. We may restrict access to any funds credited to your account that violate any laws of the United States including those giving rise to OFAC sanctions.

**FACSIMILE SIGNATURES** - You authorize us, at any time, to charge you for all checks, drafts, or other orders, for the payment of money, that are drawn on us regardless of by whom or by what means the facsimile signature(s) may have been affixed so long as they resemble the facsimile signature specimen filed with us, and contain the required number of signatures for this purpose. We may refuse any check drawn upon your account if we are not satisfied your signature is genuine, or if presented in person by a holder who does not provide identification satisfactory to us, including a fingerprint image if requested.

**PLEDGES** - Unless we agree otherwise in writing, no account or deposit of any type may be pledged, transferred, or assigned to a third party.

**POWER OF ATTORNEY** - You may wish to appoint an agent to conduct transactions on your behalf. (We, however, have no duty or agreement whatsoever to monitor or insure that the acts of the agent are for your benefit.) This may be done by allowing your agent to sign in that capacity on the signature card or by separate form, such as a power of attorney. A power of attorney continues until your death or the death of the person given the power. If the power of attorney is not "durable," it is revoked when you become incompetent. A power of attorney acceptable to the Bank, which is given by any one of you, shall be effective despite the objection of any other co-owner on the same account. We may continue to honor the transactions of the agent until: (a) we have received specific account-related written notice of the termination of the authority or the death of an owner, and (b) we have had a reasonable opportunity to act on that notice. You agree not to hold us responsible for any loss or damage you may incur as a result of our following instructions given by an agent acting under a valid power of attorney.

**STALE-DATED CHECKS** - We are not obligated to, but may at our option, pay a check, other than a certified check, presented for payment more than six months after its date. If you do not want us to pay a stale-dated check, you must place a stop-payment order on the check in the manner we have described elsewhere.

**FDIC INSURANCE** - Funds in your account(s) with us are insured by the Federal Deposit Insurance Corporation (FDIC) and backed by the full faith and credit of the United States. The amount of insurance coverage you have depends on the number of accounts you have with us and the ownership of those accounts. The standard deposit insurance amount is $250,000 per depositor for each account ownership category. If your account has a sweep feature that automatically transfers funds from your deposit account to an investment account, any funds transferred are not FDIC-insured. If you want additional information, you may ask us or contact the local office of the FDIC.

**ENDORSEMENTS** - We may accept for deposit any item payable to you or your order, even if they are not endorsed by you. We may give cash back to any one of you. We may supply any missing endorsement(s) for any item we accept for deposit or collection, and we warrant that all endorsements are genuine.

To ensure that your check or share draft is processed without delay, you must endorse it (sign it on the back) in a specific area. Your entire endorsement (whether a signature or a stamp) along with any other endorsement information (e.g. additional endorsements, ID information, driver's license number, etc.) must fall within 1½" of the "trailing edge" of a check.

00021

STYLE OF ACCOUNT

CHILDRENS CANCER FUND OF AMERICA Inc

ACCOUNT NUMBER
⬛⬛6411

DATE COMPLETED
11/14/13

ADDRESS

2317 W EMORY RD

POWELL TN 37849-3708

FIRST TENNESSEE

FINANCIAL CENTER NAME
POWELL (KNX)

FINANCIAL CENTER #
5338

SOCIAL SECURITY NUMBER / EIN

RESPON CENTER
5324

OFFICER CODE
263

DATE OF BIRTH

I hold this account (1) in the name of, payable to, or subject to withdrawal by two or more natural persons, all signers below agree that ownership interests are as shown in the account title above or as checked below.

☐ Joint tenants with right of survivorship ☒ Additional authorized signer (Power of Attorney) ☐

All signers below acknowledge receipt of the Depositor Agreement with disclosures for the Account indicated, and agree to be bound by its terms as well as any changes or additions hereafter adopted by bank. The following taxpayer certification is provided by the person signing in space #1.

Under penalties of perjury, I certify (1) that the Taxpayer Identification Number (TIN) shown on this card is my correct TIN, (2) that I am not subject to backup withholding either because I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends or the IRS has notified me that I am no longer subject to backup withholding, and (3) I am a U.S. person (including a U.S. resident alien).

Note: cross out clause (2) above before signing this card if you have been notified by the IRS that you are subject to backup withholding because you have failed to report all interest and dividends on your tax return, and you have not received a notice from the IRS advising you that backup withholding has terminated. Cross out clause (3) if you are not a U.S. person.

The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.

SIGN HERE (exactly as account is titled and as checks or withdrawals are to be signed)

_Rae Merkus_      _Brenda W Howard_

ENTO JAN 0 9 2014

DATE COMPLETED

12/09/2013

- [X] New
- [ ] Existing
- [ ] AIO
- [ ] Reg CK
- [ ] CK INS
- [ ] ST/SR
- [ ] CK INT
- [ ] IV SV

ADDRESS
2317 W EMORY RD

POWELL  TN  37849-3708

**FIRST TENNESSEE**

| | FINANCIAL CENTER NAME | FINANCIAL CENTER # |
|---|---|---|
| | POWELL (KNX) | 5338 |

| SOCIAL SECURITY NUMBER / EIN | RESPON. CENTER | OFFICER CODE | DATE OF BIRTH |
|---|---|---|---|
| | 5338 | 53380 | |

- [ ] CD
- [ ] IRA FIX
- [ ] IRA VAR
- [ ] PBC
- [ ] PBS
- [ ] PBC-SR
- [ ] PBS-SR
- [ ] EOM
- [ ] BASIC
- [ ] BUS SV
- [ ] CCIC
- [ ] PF   
- [ ] PF   
- [ ] CAC

Should this account be in the names of, payable to, or subject to withdrawal by two or more natural persons, all signers below agree that ownership interests are as shown in the account title above or as checked below.

[ ] Joint tenants with right of survivorship [X] Additional authorized signer (Power of Attorney)   [ ]

All signers below acknowledge receipt of the Depositor Agreement with disclosures for the Account indicated, and agree to be bound by its terms as well as any changes or additions hereafter adopted by bank. The following taxpayer certification is provided by the person signing in space #1.

Under penalties of perjury, I certify (1) that the Taxpayer Identification Number (TIN) shown on this card is my correct TIN, (2) that I am not subject to backup withholding either because I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or the IRS has notified me that I am no longer subject to backup withholding, and (3) I am a U.S. person (including a U.S. resident alien).

Instructions. You must cross out clause (2) above before signing this card if you have been notified by the IRS that you are subject to backup withholding because you have failed to report all interest and dividends on your tax return, and you have not received a notice from the IRS advising you that backup withholding has terminated. Cross out clause (3) if you are not a U.S. person

The Internal Revenue Service does not require your consent to any provision of this document other than the certification required to avoid backup withholding.

SIGN HERE exactly as Account is to read and as checks or withdrawals are to be signed

1. *Rose M Pikens*

2. *Brenda J Howard*